**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF MICHIGAN**

**SOUTHERN DIVISION**

Melissa Martin,

Plaintiff, Pro Se

v.

Venture Property of Michigan, LLC;

Crystal Ireland, individually and as agent of Venture Property of Michigan, LLC;

Novelty Brands, LLC;

Carlos Párraga Acosta, individually and as owner and agent of Novelty Brands, LLC;

Does 1–10,

Defendants.

(Jury Trial Demanded)

Case: 5:26−cv−10273
Assigned To : Levy, Judith E.
Referral Judge: Ivy, Curtis, Jr
Assign. Date : 1/23/2026
Description: CMP− MARTIN V.
VENTURE PROPERTY OF
MICHIGAN LLC, ET AL (CS)

**COMPLAINT**

## I. INTRODUCTION

This action arises under the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601–3619, from

Defendants' retaliation, coercion, and interference with Plaintiff's federally protected housing

rights after she engaged in protected activity related to her disabilities and requested a reasonable

accommodation.

Plaintiff is a disabled tenant with serious, well-documented medical conditions. After Plaintiff

disclosed her disabilities, asserted her right to habitable housing, requested a reasonable

accommodation for additional time to relocate safely, and filed a civil rights complaint with the

Michigan Department of Civil Rights ("MDCR"), Defendants escalated eviction proceedings,

1

interfered with Plaintiff's tenancy and Housing Choice Voucher, and attempted to coerce Plaintiff into abandoning her civil-rights complaint as a condition of avoiding homelessness.

Defendants' conduct occurred after the dismissal of a prior state-court action on October 21, 2025, and constitutes new, independent acts of retaliation, coercion, and interference actionable under federal law.

Defendants acted with full knowledge that housing instability and eviction-related stress posed a serious and foreseeable risk to Plaintiff's physical and mental health, including impaired nutrition, autonomic instability, respiratory compromise, and the need for urgent vascular surgery.

## II. JURISDICTION AND VENUE

This Court has jurisdiction under 28 U.S.C. § 1331, 28 U.S.C. § 1343(a)(3), and 42 U.S.C. §§ 3601–3619.

This Court may grant declaratory and injunctive relief under 28 U.S.C. §§ 2201–2202 and 42 U.S.C. § 3613.

Venue is proper in this District under 28 U.S.C. § 1391(b) because the events giving rise to these claims occurred in Washtenaw County, Michigan, and the subject rental property is located in this District.

## III. PARTIES

Plaintiff **Melissa Martin** is a resident of Superior Township, Washtenaw County, Michigan, and a participant in the Section 8 Housing Choice Voucher Program.

2

Plaintiff is a qualified individual with disabilities within the meaning of the Fair Housing Act.

Defendant **Venture Property of Michigan, LLC** is a Michigan limited liability company engaged in residential property management and acted as property manager and agent for the owner of the subject premises.

Defendant **Crystal Ireland** acted personally and as an agent of Venture Property of Michigan, LLC and was directly involved in management decisions affecting Plaintiff's tenancy.

Defendant **Novelty Brands, LLC** exercised ownership authority over the subject rental property and was the landlord of record during Plaintiff's tenancy.

Defendant **Carlos Párraga Acosta** is an owner, principal, or managing agent of Defendant Novelty Brands, LLC, and personally communicated with Plaintiff regarding her tenancy and medical circumstances.

Defendants **Does 1–10** are individuals or entities who participated in, authorized, or ratified in the conduct alleged herein.

## IV. FACTUAL ALLEGATIONS

### A. Plaintiff's Disabilities and Medical Vulnerability

Plaintiff suffers from multiple serious, chronic medical conditions substantially limiting major life activities, including circulation, respiration, neurological regulation, digestion, nutrition, and daily functioning.

These conditions include and not limited to arterial and neurogenic thoracic outlet syndrome with documented arterial and nerve compression, **status post major vascular surgery on January 14, 2026**, with ongoing post-operative limitations and medical vulnerability; autonomic dysfunction including postural orthostatic tachycardia syndrome (POTS) with hypoglycemia; pulmonary sarcoidosis; chronic kidney disease with a solitary kidney; fibromyalgia; severe gastrointestinal disorders resulting in malnutrition and weight loss; and trauma-related mental health conditions including Complex PTSD.

Plaintiff's treating physicians have extensively documented that housing instability and severe stress pose serious risks to Plaintiff's health and surgical outcomes. Separately, Defendants' failure to maintain adequate heat and utilities during winter conditions independently exacerbated Plaintiff's medical vulnerability.

**B. Prior Medical Notice to Defendants**

Prior to October 2025, Defendants were provided extensive medical documentation from multiple specialists explaining Plaintiff's disabilities, medical vulnerability, and the foreseeable harm posed by forced relocation and housing instability.

Defendants were explicitly informed that eviction-related stress impaired Plaintiff's ability to eat, maintain weight, regulate autonomic function, and remain medically stable.

**C. Protected Activity**

Plaintiff engaged in protected activity under the Fair Housing Act, 42 U.S.C. §§ 3601–3619, including but not limited to:

a. Disclosing her disabilities and requesting reasonable accommodations related to her medical conditions and Section 8 tenancy;

b. Asserting her rights to habitable housing and opposing unsafe housing conditions; and

c. Filing and actively pursuing a civil rights complaint and request for mediation with the Michigan Department of Civil Rights ("MDCR").

Defendants had actual knowledge of Plaintiff's protected activity. At all relevant times, Defendants knew that Plaintiff's MDCR civil rights complaint and investigation were active, ongoing, and pending, and that Plaintiff was invoking federally protected rights.

**D. Retaliatory Escalation Following Denial of Possession in Circuit Court**

After Defendants failed to obtain possession of the property in Circuit Court—where the Court denied Defendants' request for possession and expressly indicated that any eviction would need to be pursued separately in District Court—Defendants escalated their conduct toward Plaintiff.

Immediately following the Circuit Court hearing, while Plaintiff was unrepresented, medically compromised, and attempting to understand the Court's ruling, Defendants' counsel engaged Plaintiff in post-hearing hallway communications implying that she was expected to discuss a move-out date, despite the Court's denial of possession. Plaintiff reasonably believed she was required to engage in such discussions and did not understand that she was under no legal obligation to do so.

Any subsequent reference by Plaintiff to a potential move-out date was made under confusion, perceived pressure, and procedural imbalance, and was not a voluntary offer, agreement, or concession of possession, nor a waiver of Plaintiff's tenancy or rights.

Rather than accepting the Court's ruling, Defendants escalated their response. Plaintiff had engaged in protected activity and requested Defendants to engage in MDCR mediation, which were already filed and pending. Defendants' counsel said he was not representing them in MDCR complaint and that they now would be escalating to eviction, even though Plaintiff a week prior tried to negotiate a move out date with no response.

On November 3, 2025, Defendants initiated eviction proceedings, which were served on Plaintiff on November 7, 2025.

**E. Retaliation and Causal Connection**

Defendants' initiation of eviction proceedings occurred in close temporal proximity to Plaintiff's protected activity, including her accommodation requests and civil rights enforcement efforts, and immediately followed Defendants' failure to obtain possession in Circuit Court.

The timing, sequence, and surrounding circumstances—including Defendants' knowledge of Plaintiff's disabilities, medical fragility, and pending civil rights investigation—support a strong causal connection between Plaintiff's protected activity and Defendants' retaliatory escalation to eviction.

Defendants' conduct was not routine enforcement, but a punitive response to Plaintiff's assertion of federally protected rights.

6

**F. Coercive and Unlawful Settlement Demands**

On **November 7, 2025**, less than two hours after Plaintiff was served with the eviction action, Defendants' counsel communicated that Defendants would dismiss the eviction and allow Plaintiff to remain temporarily **only if** Plaintiff agreed to:

a. dismiss her pending MDCR civil rights complaint;

 b. waive appellate rights; and

 c. waive future legal claims against Defendants.

Plaintiff refused.

During these communications, Defendants' counsel attempted to disclaim responsibility for the MDCR matter by stating that he did not represent Defendants in the civil rights complaint, while simultaneously using the eviction proceedings and housing stability as leverage to force Plaintiff to choose between retaining her housing and preserving her civil rights. This conduct was designed to obscure accountability while exerting coercive pressure on a disabled tenant.

At the **first eviction hearing in November 2025**, while the court was scheduling the next hearing date, Defendants' counsel again contacted Plaintiff directly by text message, stating that Defendants would allow Plaintiff an additional month to move out **only if** Plaintiff agreed to give up her rights and withdraw her civil rights complaint.

On **December 5, 2025**, during a subsequent hearing, Judge Simpson stated on the record that courts have consistently held that acceptance of rent after a nonrenewal date nullifies the nonrenewal. Despite this, Defendants' counsel asserted that he could nevertheless prove res

judicata. The Court expressly disagreed and allowed Defendants two additional weeks to attempt to support that argument.

Notwithstanding the Court's statements and the lack of any legal requirement for Plaintiff to waive her rights, Defendants renewed efforts to condition dismissal or resolution of the eviction proceedings on Plaintiff's abandonment of her civil rights complaint and protected activity.

Defendants' repeated use of eviction proceedings, timing pressure, and housing instability to force Plaintiff to relinquish federally protected rights constitutes **coercion, interference, and retaliation** in violation of **42 U.S.C. § 3617**.

### G. Improper and Intimidating Direct Communications by Ownership

After the December 5th hearing and while Plaintiff's civil rights investigation remained pending, Defendant Carlos Párraga Acosta, acting on behalf of ownership, directly contacted Plaintiff outside the presence of counsel.

These communications addressed Plaintiff's tenancy, housing status, and medical condition, despite active legal proceedings and ongoing representation. Defendants' direct contact with Plaintiff was improper, intimidating, and designed to exert pressure on a disabled tenant pursuing civil rights remedies.

Such conduct further evidences Defendants' intent to interfere with Plaintiff's exercise of rights protected under the Fair Housing Act.

**H. Tenant-Portal Lockout**

Beginning in or about October 2025 and continuing to the present, Defendants locked Plaintiff out of her tenant portal, which is the primary method for rent records, maintenance requests, Section 8 coordination, and official tenancy communications.

Defendants refused to restore access despite repeated written requests, interfering with Plaintiff's ability to manage her tenancy during a medically critical period.

**I. Post–State Court Heating and HVAC Interference**

The subject property has a documented history of furnace and HVAC violations previously cited by municipal inspectors. Defendants represented that these violations had been corrected.

Plaintiff was locked out of the basement mechanical area and denied access to verify repairs. In January 2026, Plaintiff only gained temporary access when an HVAC contractor was present due to complaints of poor heating ventilation that started in or around November/December of 2025.

Plaintiff observed that prior violations had been addressed with partial or cosmetic measures, including tape and incomplete sealing, rather than proper correction, and that heating output remained insufficient.

Plaintiff was forced to rely on space heaters during winter months, increasing utility costs and health risks.

9

These conditions exacerbated Plaintiff's POTS, respiratory symptoms, hypoglycemia, and post-surgical vulnerability.

**J. Section 8 Disruption, Administrative Manipulation, and Constructive Pressure**

Defendants intentionally disrupted Plaintiff's Housing Choice Voucher ("Section 8") tenancy by inducing adverse administrative action through misrepresentation and omission, rather than through lawful judicial process.

While Plaintiff's tenancy remained legally intact—and in the absence of any court order for possession, termination of tenancy, or judgment—Defendants communicated directly with Plaintiff's Section 8 caseworker and Housing Authority representatives to convey that Plaintiff was expected to vacate the unit due to nonrenewal and purported move-out negotiations. These representations were false and misleading. Plaintiff had not agreed to vacate, no lawful eviction was in effect, and Defendants knew or reasonably should have known that the pending District Court matter was subject to dismissal.

Defendants' communications were made without notice to Plaintiff, despite Defendants' awareness that Plaintiff was disabled, medically fragile, recovering from major vascular surgery, and actively engaged in protected civil rights activity. Defendants further knew that Housing Authority personnel would foreseeably rely on landlord representations when determining voucher status and payment administration.

Relying on Defendants' unilateral communications—and without independently verifying the procedural posture of the case or providing advance notice to Plaintiff—the Housing Authority suspended Housing Assistance Payments ("HAP"). Plaintiff was not afforded an opportunity to

10

contest the suspension, was not notified in advance, and was left without clarity regarding the status of her voucher, tenancy, or housing stability.

Subsequently, Housing Authority personnel conveyed to Plaintiff that the landlord retained unilateral authority to reclaim the unit, emphasized that Plaintiff did not "own" the unit, stated that no further correspondence regarding the matter would be addressed, and indicated that Plaintiff would be required to vacate once deemed medically able. These statements were communicated to Plaintiff as a consequence of Defendants' representations, not as the result of any judicial determination or lawful termination of tenancy.

Defendants' conduct was not a neutral withdrawal from participation in a voluntary program. Rather, Defendants weaponized the Section 8 administrative process by leveraging Housing Authority reliance on landlord communications to destabilize Plaintiff's housing, suspend rental assistance, and exert pressure toward displacement outside of court oversight.

This course of conduct created a coercive and untenable dilemma for Plaintiff: remain housed without rental assistance under constant administrative threat or vacate the unit to preserve her voucher eligibility. Such pressure was imposed while Plaintiff was disabled, recovering from surgery, and was pursuing protected civil rights claims at all relevant times, and was foreseeable to cause fear, instability, and constructive pressure on a tenant dependent on voucher housing.

A fair housing advocate reviewing the handling of the Housing Assistance Payment suspension identified the lack of tenant notice, verification, and procedural safeguards as improper, particularly given the known context of disability, medical recovery, and ongoing retaliation concerns. Defendants' conduct exploited these administrative failures to advance displacement through nonjudicial means.

11

Defendants' actions constituted interference, coercion, and retaliation in violation of the Fair Housing Act, including 42 U.S.C. § 3617, by manipulating third-party administrative processes to impair Plaintiff's housing stability and punish Plaintiff for engaging in protected activity.

### K. Harm and Foreseeability

As Defendants' conduct escalated, Plaintiff experienced severe weight loss, autonomic instability, worsening respiratory and vascular symptoms, psychological deterioration, and increased medical risk.

Defendants were repeatedly placed on notice that these harms were foreseeable.

### V. CLAIMS FOR RELIEF

### COUNT I – Retaliation, Coercion, and Interference
 *(42 U.S.C. § 3617)*

Defendants retaliated against Plaintiff and interfered with her housing rights because of protected activity.

### COUNT II – Failure to Make Reasonable Accommodation
 *(42 U.S.C. § 3604(f)(3)(B))*

Defendants denied reasonable accommodation and failed to engage in an interactive process.

## VI. DAMAGES AND IRREPARABLE HARM

Plaintiff suffered physical, emotional, and housing-related harm and faces ongoing irreparable injury absent judicial relief.

## VII. RELIEF REQUESTED

Plaintiff respectfully requests declaratory relief; injunctive relief; compensatory and punitive damages; costs and fees; and any further relief deemed just.

## VIII. JURY DEMAND

Plaintiff demands a jury trial.

Respectfully submitted,

*Melissa Martin*

Melissa Martin
Plaintiff, Pro Se
1575 Ridge Rd., Apt. 1
Superior Township, MI 48198
mmmartin91@gmail.com
734-306-1274

13